**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

Francis Marc Louvard,

      Route du Belvédère 26,
      1965 Savièse, Switzerland

Gregory Maurice Ingram,

      Hochstrassee 75 A,
      81541 Munich, Germany

             *Petitioners,*

      v.

Italian Republic,

      Avvocatura Generale dello Stato
      Via dei Portoghesi 12
      00186 Rome, Italy

             *Respondent.*

</td><td>

Civil Action No. _____

</td></tr>
</table>

**Petition to Enforce Arbitral Award**

Petitioners Francis Marc Louvard and Gregory Maurice Ingram ("Petitioners") bring this action to enforce a €18,222,565.35 arbitral award (the "Award"), plus interest, issued on September 14, 2020, in ICSID Case No. ARB/16/5 against Respondent, the Italian Republic ("Italy"), following arbitration proceedings conducted in accordance with the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"). Petitioners also seek to enforce an additional award of €807,321.13 in legal fees and expenses issued against Italy following proceedings pursuant to the ICSID Convention to annul the Award (the "Annulment Decision"). Italy now owes the equivalent of more than $33 million on these obligations after accounting for interest. Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, arbitral awards issued under the ICSID Convention, including both the Award and the Annulment

Decision, are not subject to collateral attack and must be enforced and given the same full faith and credit as if they were final judgments of a court in the United States.

Accordingly, Petitioners request that this Court (1) enter an order enforcing the Award and the Annulment Decision in the same manner as a final judgment issued by a court of one of the several states, and (2) enter judgment against Italy and in Petitioners' favor in the amount of €18,565,498.13, plus interest.

A certified copy of the Award is attached as Exhibit A to the Declaration of Matthew S. Rozen ("Rozen Declaration"), Exhibit 1 hereto. A certified copy of the Annulment Decision is attached as Exhibit B to the Rozen Declaration. A copy of the ICSID Convention is attached hereto as Exhibit 2.

**Parties**

1.      Petitioner Louvard is a French citizen who resides in Switzerland.

2.      Petitioner Ingram is a U.S. and French citizen who resides in Germany.

3.      The Award was issued to Louvard and Ingram's predecessors in interest, ESPF Beteiligungs GmbH ("ESPF"), ESPF Nr. 2 Austria Beteiligungs GmbH ("ESPF 2"), and InfraClass Energie 5 GmbH & Co. KG ("ICE 5") (collectively, "Claimants").

4.      ESPF and ICE 5 are companies incorporated under the laws of Germany.

5.      ESPF 2 is a company incorporated under the laws of Austria.

6.      Claimants thereafter assigned all proceeds, rights, interests, and benefits under the Award and the Annulment Decision to Louvard and Ingram, with each holding a 50% share in those proceeds, rights, interests, and benefits.

7.      Respondent, the Italian Republic, is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1602-1611.

2

**Jurisdiction and Venue**

8.      This Court has subject-matter jurisdiction over this action pursuant to the FSIA, 28 U.S.C. § 1330(a), because this is a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity" under the FSIA.

9.      Pursuant to Section 1605(a)(1) of the FSIA, Italy is not entitled to immunity from this Court's jurisdiction in an action to enforce an ICSID Convention award because it has waived that immunity by agreeing to the ICSID Convention.  *See Tatneft v. Ukraine*, 771 F. App'x 9, 9 (D.C. Cir. 2019) (per curiam); *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013).

10.     Further, pursuant to Section 1605(a)(6) of the FSIA, Italy is not immune from suit because this is an action to enforce an arbitral award made pursuant to the arbitration provision of an investment treaty, *see infra* ¶¶ 16-19, and enforcement is governed by the ICSID Convention, which is a treaty in force in the United States for the recognition and enforcement of arbitral awards. *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1094 (D.C. Cir. 2024).

11.     This Court also has subject-matter jurisdiction pursuant to 22 U.S.C. § 1650a(b), which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over actions and proceedings" to enforce awards entered under the ICSID Convention.

12.     This Court has personal jurisdiction over Italy pursuant to the FSIA, 28 U.S.C. § 1330(b).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4).

13.     The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., does "not apply to enforcement of awards rendered pursuant to the [ICSID] convention." 22 U.S.C. § 1650a(a).  Thus, the FAA's jurisdictional requirements do not apply to this action.

3

**The Underlying Dispute**

14.     Beginning in 2003, Italy adopted legislation that introduced a tariff incentive program for solar photovoltaic ("PV") energy within its territory, in order to attract investments in the PV sector.  Award ¶¶ 75-120.  In reliance on the financial incentives and inducements provided by this legislation, between 2009 and 2012, Claimants collectively invested more than €398 million in solar PV plants in Italy's territory.  *Id*. ¶¶ 132-47.  In 2014, however, Italy enacted a legal measure that significantly reduced the incentive tariffs on which Claimants had relied in investing in the solar PV plants.  *Id*. ¶¶ 148, 187-96.

15.     Claimants' investments in solar PV plants were protected by the Energy Charter Treaty ("ECT") (Exhibit 3 hereto), which "establishes a legal framework [for] promot[ing] long-term cooperation in the energy field," ECT, art. 2, and seeks to "create stable, equitable, favourable and transparent conditions for Investors . . . includ[ing] a commitment to accord . . . fair and equitable treatment," *id* art. 10(1).

16.     The ECT protects investments in the territory of a "Contracting Party" to the treaty by "Investors" located or incorporated in "other Contracting Parties."  ECT, arts. 1(7), 10(1), 26.

17.     At the time of the investment, Italy, Germany, and Austria were Contracting Parties to the ECT, so the ECT protected investments in Italy by investors located or incorporated in Germany and Austria.  Award ¶¶ 214-215.  Although Italy and Germany have subsequently withdrawn from the ECT, the ECT by its terms "continue[s] to apply" to investments made before that withdrawal took effect, ECT, art. 47(3).

18.     Claimants ESPF, ESPF 2, and ICE 5 are investors under the ECT.  ESPF and ICE 5 are incorporated under the laws of Germany, and ESPF 2 is incorporated under the laws of Austria.  Award ¶ 4.  Claimants' investments in Italy are therefore protected by the ECT.

19.     Contracting Parties to the ECT consent to submit disputes arising under that treaty to arbitration.  Article 26(3)(a) of the ECT provides that "each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration . . . in accordance with the provisions of this Article."  Article 26(4)(a)(i) further provides that where "the Contracting Party of the Investor and the Contracting Party . . . to the dispute are both parties to the ICSID Convention," the dispute will be submitted for arbitration under that convention.  Accordingly, Italy consented to arbitrate the underlying dispute pursuant to the ICSID Convention.

20.     On January 29, 2016, Claimants filed a request with the International Centre for Settlement of Investment Disputes ("ICSID") for arbitration under the ICSID Convention.  Award ¶ 8.  Claimants contended, among other things, that Italy's reduction of the incentive tariffs offered for Claimants' investments constituted a breach of its obligations under the ECT.  *Id.* ¶¶ 2, 148, 437-39, 449-53, 469-88, 548-555, 672-81, 726-40.

21.     An ICSID arbitral tribunal (the "Tribunal") was constituted on July 26, 2016.  Award ¶ 11.

22.     The Tribunal conducted hearings on merits and jurisdiction in Paris, France from June 20, 2018, to June 23, 2018.  Award ¶ 44.

23.     On September 14, 2020, the Tribunal issued the 370-page Award.  The Tribunal first determined that it had jurisdiction to resolve Claimants' claims, Award ¶ 211-220, 266-330, 364-77, 387-91, except as to a narrow dispute regarding certain tax measures, *id.* ¶¶ 354-57.  The Tribunal then decided that by "unilaterally modif[ying] the specific commitments . . . that induced [Claimants] to make their investments in Italy," *id.* ¶ 706, Italy had breached its obligations under Article 10(1) of the ECT to accord Claimants' investments fair and equitable treatment, to refrain from impairing them through unreasonable measures, and to abide by any obligations it has entered into with Claimants.  *Id.* ¶¶ 442-44, 457-66, 508-46, 566-98, 698-709, 749-58, 787-93, 811-24, 827-29.  The

Tribunal ordered Italy to pay €16,000,000 as compensation, in addition to interest at the 12-month

Euribor rate plus 4.0%, compounded annually from January 1, 2015 until payment in full by Italy.

*Id.* ¶ 951(c). The Tribunal also ordered Italy to pay legal fees and expenses in the amount of

€1,758,177 and ICSID fees in equal to the "the expended portion of Claimants' advances to ICSID

(as reflected in ICSID's final case statement)." *Id.* ¶ 951(d). That final case statement shows that

Claimants made advanced payments of €788,714.57, of which €149,925 was later refunded, for a net

payment of €464,388.35. ICSID Financial Statement, Exhibit C to Rozen Declaration.

24.  On January 11, 2021, Italy filed an application for annulment of the Award.

Annulment Decision ¶¶ 11-12. On July 31, 2023, an *ad hoc* Committee constituted under the ICSID

Convention denied Italy's application for annulment and ordered Italy to pay Claimants €807,321.13

in legal fees and expenses incurred during the annulment proceeding, in addition to interest at the

six-month Euribor rate, compounded semi-annually until full payment by Italy. *Id.* ¶¶ 397(1)-(4).

25.  On September 4, 2024, Claimants entered into an agreement with Petitioners to assign

Petitioners—effective November 8, 2024—all proceeds, rights, interests, and benefits under the

Award and the Annulment Decision. Claimants informed Respondent of the assignment on

November 8, 2024.

**Legal Basis for Relief**

26.  The ICSID Convention provides that contracting parties must "recognize an award

rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by

that award within its territories as if it were a final judgment of a court in that State." ICSID

Convention, art. 54(1). The ICSID Convention further provides that a contracting state "with a

federal constitution may enforce such an award in or through its federal courts and may provide that

such courts shall treat the award as if it were a final judgment of the courts of a constituent state."

*Id.*

27.    The United States is a contracting party to the ICSID Convention and is therefore obligated to enforce the Award as if it were a final judgment of a court in the United States.[1]  That obligation is fulfilled by 22 U.S.C. § 1650a, which provides:

> (a) An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States.  The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.  The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

28.    Arbitral awards issued against a foreign state pursuant to the ICSID Convention may be enforced by bringing a plenary action in federal court in compliance with the requirements for commencing a civil action under the Federal Rules of Civil Procedure, and with the personal jurisdiction, service, and venue requirements of the FSIA.  *See Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 49-50 (D.D.C. 2015); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100, 117-20 (2d Cir. 2017).

29.    Awards issued pursuant to the ICSID Convention are not subject to collateral attack in enforcement proceedings under 22 U.S.C. § 1650a.  Contracting states' courts are "'not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award.'"  *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 515 (D.C. Cir. 2023).

30.    The ICSID Convention therefore "'reflects an expectation that the courts of a member nation will treat the award as final.'"  *Valores*, 87 F.4th at 518; *see also* ICSID Convention, arts. 53(1), 54(1).  Consistent with this mandate, 22 U.S.C. § 1650a(a) provides that the FAA "shall not apply to enforcement of awards rendered pursuant to the convention," thereby "mak[ing] [the FAA's

---

[1] ICSID, *List of Contracting States and Other Signatories of the Convention* (Aug. 25, 2024), https://tinyurl.com/58ss4ybz.

defenses] unavailable to ICSID award-debtors in federal court enforcement proceedings." *Mobil Cerro*, 863 F.3d at 120-21. District courts thus enforce ICSID awards without allowing substantive challenges to enforcement of the awards. *See, e.g.*, *Blasket Renewable Invs., LLC v. Kingdom of Spain*, 2024 WL 4298808, at *8 (D.D.C. Sept. 26, 2024); *Perenco Ecuador Ltd. v. Republic of Ecuador*, 2023 WL 2536368, at *5 (D.D.C. Mar. 16, 2023); *Tethyan Copper Co. PTY Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262 (D.D.C. Mar. 10, 2022); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018); *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 132-34 (D.D.C. 2012); Order, *Republic of Panama v. Jurado*, No. 8:12-cv-1647, Doc. 18 (M.D. Fla. June 13, 2013).

## Cause of Action and Request for Relief

31.     Arbitral awards issued pursuant to the ICSID Convention are subject to mandatory enforcement in the courts of the United States, which must give those awards the same full faith and credit as a final judgment issued by a state court. 22 U.S.C. § 1650a(a).

32.     The Award was rendered in accordance with the ICSID Convention against Italy and in Claimants' favor. Because the Claimants assigned to Petitioners all proceeds, rights, interests, and benefits under the Award and the Annulment Decision, Petitioners are entitled to enforce against Italy the pecuniary obligations imposed by the Award and the Annulment Decision.

33.     Accordingly, Petitioners are entitled to an order (a) enforcing the Award and the Annulment Decision in the same manner as final judgments issued by a court of one of the several states, and (b) entering judgment in Petitioners' favor in the amounts specified in the Award and the Annulment Decision.

34.     Petitioners request that the Court enter judgment in euros, the currency specified in the Award. *See* Award ¶ 951(c)-(d). This Court has authority to enter judgment in a foreign currency when requested by the judgment creditor. *See Cont'l Transfert Technique LtdFed. Gov't of Nigeria*,

932 F. Supp. 2d 153, 158 (D.D.C. 2013), *aff'd*, 603 F. App'x 1, 42015); *accord Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 220 (D.C. Cir. 2018).

WHEREFORE, Petitioners request that the Court enter an order:

   (a)   enforcing the Award against Italy in the same manner as a final judgment issued by a court of one of the several states; and

   (b)   entering judgment against Italy and in Petitioners' favor in the amount of:

      (i)   €16,000,000 in principal;

      (ii)   interest on that principal at the 12-month Euribor rate plus 4.0%, compounded annually from January 1, 2015 until the date of entry of judgment;

      (iii)   €1,758,177 for legal fees and expense incurred during the arbitration;

      (iv)   €464,388.35 for ICSID expenses incurred during the arbitration;

      (v)   €807,321.13 in Claimants' legal fees and expenses under the Annulment Decision;

      (vi)   interest on the legal fees and expenses awarded under the Annulment Decision at the six-month Euribor rate, compounded semi-annually from July 31, 2023 until the date of entry of judgment; and

      (vii)   post-judgment interest on each of the above sums at a rate to be determined by the Court.

Dated: June 6, 2025

Respectfully submitted,

/s/Matthew S. Rozen
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
Patrick W. Pearsall, D.C. Bar #975801
ppearsall@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Petitioners*